UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THERESA A. TAYLOR                                          PLAINTIFF

VS.                              CIVIL ACTION NO. 3:12CV702TSL-RHW

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA                                                 DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
Theresa A. Taylor for summary judgment and to vacate termination
and denial of long term disability benefits and on the cross-
motion of defendant The Prudential Insurance Company of America
(Prudential) for summary judgment.  Both motions have been fully
briefed by the parties.  The court, having considered the
memoranda of authorities submitted by the parties and having
carefully reviewed the administrative record, concludes that
Prudential is entitled to summary judgment.  Accordingly,
Prudential's motion will be granted and plaintiff's motion will be
denied.

Facts

Prior to February 2, 2011, when she stopped working due to
symptoms associated with fibromyalgia, sleep apnea and worsening
of spinal disease, Theresa Taylor was employed by the Wm. Wrigley
Jr. Company as a Territorial Sales Manager.  Through her
employment, Taylor was a participant in an employee welfare

benefit plan that provided disability coverage.  The Plan was administered by Prudential.  Under the terms of the Plan's short-term disability coverage, a claimant is entitled to receive benefits for a period of up to fifty-two weeks if she is "unable to perform the material and substantial duties of your regular occupation due to your sickness or injury...."  The Plan's long-term disability coverage provides for continued payment of benefits for up to twelve months to a participant who remains unable to perform the material and substantial duties of her regular occupation.  After twelve months, she is considered disabled and entitled to continued long-term disability benefits if she is unable to perform the duties of any "gainful occupation for which [she is] reasonably fitted by education, training or experience."  "Gainful occupation" is defined as "an occupation, including self-employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work."

After she stopped work, Taylor submitted a claim for disability benefits to Prudential.  Initially, on March 11, 2011, Prudential denied her claim, citing a lack of objective medical evidence to support a finding that she met the Plan definition of disabled.  After Taylor appealed, Prudential found she was entitled to receive short-term disability benefits for a period of thirty days, through March 3, 2011, for diagnostic testing,

treatment and evaluation by specialists, and for physical therapy due to an exacerbation of chronic low back pain. It denied her claim for additional benefits. Following unsuccessful administrative appeals of Prudential's decision,[1] Taylor filed this action on October 15, 2012, alleging she was wrongly denied short-term and long-term disability benefits under the Plan.

By memorandum opinion and order entered July 1, 2013, the court found that Taylor had failed to exhaust the administrative process on her claim for long-term disability benefits and so stayed the case so she could pursue her claim for long-term disability benefits through the administrative process.

In the meantime, on February 22, 2013, Taylor was awarded Social Security disability benefits, retroactive to February 11, 2011. Thereafter, on July 22, 2013, Taylor filed her formal claim for long-term disability benefits. As support for her claim that she was disabled from performing the duties of her job at Wrigley, Taylor noted her diagnoses of multiple illnesses and conditions

---

[1] On July 26, 2011, Prudential upheld the decision to terminate STD benefits effective March 3, 2011, finding there was "no severity of symptoms that would support any restrictions or limitations from your regular occupation" and "no medical to support your inability to perform the material and substantial duties of your regular occupation...." On November 3 2011, Prudential denied Taylor's second appeal, finding there was "no medical to support an impairment that would preclude you from performing your light occupation due to fibromyalgia or your back condition."

which included fibromyalgia syndrome; shoulder pain and calcific tendinitis; history of C5-C6 anterior cervical discectomy and fusion and history of lumbar surgery times two at the L4-5 level on the left; low back pain with radiation to the left lower limb; irritable bowel syndrome; and sleep apnea. She cited medical records from her various medical providers, including her primary care provider, Dr. Massie Headley; her physical medicine and rehabilitation specialist, Dr. Rahul Vohra; and her rheumatologist, Dr. James Hensarling. In addition, she provided her award of Social Security disability benefits and a June 2011 Functional Capacity Evaluation (FCE) which indicated she was "capable of performing physical work at a Light level" but should not lift or carry weight greater than 25 pounds and 15 pounds overhead, and would do well to limit "sitting, twisting, kneeling, elevated work, and forward bending work to occasionally."

Upon receipt of Taylor's claim, Prudential had an in-house physician, Dr. Jonathan Mittelman, review her file. Based on his review, Dr. Mittelman agreed with the conclusions of the FCE that she could work in a light capacity. With regard to Taylor's back pain, Dr. Mittelman noted that she had a remote history of a cervical fusion in 2008 and a lumbar surgery in 2000 and 2007; and though she had complaints of pain, she had been able to work following those surgeries. He noted the limitations identified in the FCE were consistent with her past surgical history. He

further acknowledged that the clinical data was consistent with her diagnosis of fibromyalgia.  He explained that fibromyalgia is a chronic condition and is not progressive.  "It does not cause damage to any joints, muscles, or organs and with multidisciplinary treatment, including life style management (good sleep habits, regular exercise and stretching, ensuring ergonomic work activity, attention to good nutrition) most people with this condition would be expected to maintain the ability to perform gainful work activity on a reliable basis."  He observed that Taylor had been "largely stable in her complaints over the course of 2013," and he found "no reason to alter the limitations determined in her 2011."

On February 5, 2014, Prudential notified Taylor that her claim for long-term disability benefits was denied.  Prudential advised that based on the limitations identified in the FCE and Dr. Mittelman's report, Taylor had the capacity for light work; that her job at Wrigley was in the light category; and therefore, she did not meet the policy definition of disabled.  Taylor appealed this decision, and on July 14, 2013, Prudential reversed its initial decision and awarded Taylor long-term disability benefits through February 13, 2011.  Prudential found that Taylor's job at Wrigley was more accurately classified as medium rather than light, and that, given the findings of the FCE, she met the policy's "regular occupation" definition of disability

applicable for the initial twelve months.  Prudential denied

further benefits from and after February 16, 2013, but advised

that it was continuing its review of Taylor's claim to determine

whether she was eligible for long-term disability benefits beyond

the initial twelve-month period, i.e., under the "gainful

occupation" standard.

As part of that review, Prudential requested that Taylor

submit to an Independent Medical Examination (IME).  Taylor

agreed, and on October 31, 2014, was examined by Dr. Philip J.

Blount.  Following the examination, and after spending

approximately two hours reviewing Taylor's medical records, Dr.

Blount issued his report detailing her medical history and

diagnoses, the results of his examination and his findings and

opinions.  As part of the evaluation, Dr. Blount was asked to

identify appropriate restrictions and/or limitations in view of

her functional limitations.  He responded,

> Ms. Taylor's presentation is completely consistent with
> fibromyalgia syndrome.  I would offer no formal
> restrictions and limitations based on this.
>
> The examinee has been followed chronically for greater
> than ten years by appropriate treating physicians.
> Given the chronicity and complexity, two ... FCEs have
> been performed and limitations have been provided by
> outside treating physicians.

Asked whether her "self-reported level of chronic pain" was

"supported and/or consistent with the results of diagnostic

testing," Dr. Blount responded that her examination was

"completely consistent with a fibromyalgia syndrome" and that "[f]ibromyalgia syndrome cannot be objectively measured. Pain cannot be objectively measured." He opined that while Taylor had a cervical spine procedure previously, this condition "was stable and not the cause of her chronic symptoms." She also had a history of two prior lumbar procedures, "but her presentation today was not indicative of any active radicuolopathy," which, he noted, was "supported by her negative electrodiagnostic evaluation performed by her treating physician and her MRI findings of stability." Thus, he considered that the primary condition causing her symptoms was fibromyalgia. Regarding that condition, he wrote:

> Fibromyalgia syndrome, in my practice, does not have any formal limitations or restrictions, as tolerance for symptoms are the limiting factor.
>
> I did spend over two hours reviewing chronic notes dating more than ten years that have included evaluations and appropriate conservative management from her primary care, surgery specialists, physical medicine and rehabilitation specialists, and rheumatologists. At the collective opinion of these providers, FCEs were recommended, and the result of this was light-duty status. ...
>
> Although it is true that fibromyalgia syndrome is non-sinister, with age and chronicity, there is a normal physiologic decline in abilities. ...
>
> I agree with the treating physician that the examinee should not be required to climb ladders, ropes, and scaffolds given her balance issues I observed today and her medications that she is currently taking. I do feel, however, that she should be able to work as indicated by her FCE.... Again, with her presentation

today, primarily with fibromyalgia syndrome, the
tolerance for symptoms would be her own limiting factor,
and I would certainly allow her to do this.

In conclusion, I respect the treating physicians with
their request of light-duty status, and this is based on
two FCEs and my review of chronic records spanning over
ten years by reputable and reliable physicians that I
believe have provided good care.

On November 24, 2014, after receiving Dr. Blount's report,

Prudential requested a vocational assessment to identify

alternative occupations which would provide earnings of at least

$15.63 per hour[2] for which Taylor would be qualified, given her

education, training, and work experience and taking into

consideration the restrictions identified in Dr. Blount's IME and

the June 2011 FCE.  A Prudential Vocational Specialist, Steve

Lambert, undertook this assessment, and reported that, taking into

account the various restrictions and limitations identified in Dr.

Blount's IME and the FCE and Taylor's transferrable skills, he had

identified three alternative sedentary occupations that would

provide the required gainful wage:  Inside Sales Representative

(hourly wage of $21.33), E-Commerce Sales Representative (hourly

wage of $21.51), and Customer Center Representative (hourly

wage of $17.78).  Accordingly, by letter dated December 19, 2014,

Prudential denied Taylor's claim for long-term disability benefits

---

[2]     Prudential arrived at the $15.63 per hour figure by
converting Taylor's annual salary at Wrigley to an equivalent
hourly wage.

beyond February 16, 2013.  In doing so, it noted that it had taken into consideration the fact that she was approved for Social Security disability benefits but explained that whereas "the [SSA] must make their determinations based on the information available to them at the time of their decision completed on February 22, 2013, as well as their rules and guidelines," Prudential had made its decision "based on the LTD policy under which Ms. Taylor is insured, a review of more recent treatment records, and the opinions of an IME physician."

Taylor appealed Prudential's decision, arguing that Prudential had given insufficient weight and consideration to the SSA's determination; that the IME was unduly focused on the fibromyalgia and failed to consider the multiplicity of illnesses and conditions from which she suffers; that the vocational/ employability assessment was flawed, as she was a salaried, not hourly, employee; and that restrictions and limitations cited by Prudential in its decision were incorrectly stated and contradicted restrictions identified by Dr. Vohra.

Upon receipt of her appeal, Prudential submitted Taylor's records (including her medical records, the 2011 FCE report, the Social Security determination and Dr. Blount's IME report) for review by an independent physician, Dr. Lucien Parrillo.  Dr. Parrillo concluded that "[b]ased on the documentation reviewed, the claimant does not have any medically necessary restrictions or

limitations from any condition or combination of conditions from

02/17/2013 forward...." He opined:

> The claimant does not have any degree of physical
> impairment that is supported by the available medical
> evidence. There is no diagnostic data that would
> substantiate any level of physical incapacity, nor the
> medical necessity for functional restrictions/
> limitations in the workplace. While it is evident this
> claimant has been diagnosed/treated for several chronic
> medical conditions ... the physically debilitating
> effects of these diagnoses has not been objectively
> established.

Accordingly, Prudential upheld its denial decision and so notified

Taylor by letter dated August 20, 2015. Prudential rejected

Taylor's claim that it had failed to give adequate consideration

to the Social Security disability determination, again explaining

that its decision was based on information the SSA did not have at

the time of its decision. It denied that it had failed to

consider her "multiplicity of symptoms," noting that Dr. Blount's

IME had been thorough and considered all of her diagnoses and

symptoms. As to her assertion that Prudential had wrongly

considered hourly rather than salaried positions in identifying

alternative jobs, Prudential responded that this approach was not

inconsistent with the Plan's definition of "gainful occupation,"

which did not "state that if one is salar[ied], a salar[ied]

occupation need be identified or vice versa."

Taylor again appealed, making the same arguments as before.

In connection with her appeal, Taylor provided a vocational

assessment performed by Dr. Larry Stokes in which he concluded

that she was "not competitively employable in the labor market,

nor could she perform in a gainful occupation and achieve 60% of

her monthly salary, which would equate to $2,710.00 per month.

Her functional ability does not translate into an ability to

maintain gainful employment."  In identifying her functional

limitations,  Dr. Stokes relied almost exclusively on an August

12, 2012 Medical Source Statement completed by one of plaintiff's

treating physicians, Dr. Rahul Vohra, in connection with Taylor's

claim for Social Security disability benefits.  In that Medical

Source Statement, Dr. Vohra indicated that Taylor could sit about

four hours per day and stand/walk less than two hours per day.

Dr. Stokes noted that these restrictions would place her "at a

part-time position of a maximum of six hours a day."  Further, Dr.

Vohra's Medical Source Statement indicated she could lift 10

pounds "occasionally,"[3] which Dr. Stokes noted "would also place

---

[3]     Social Security regulations state:
Sedentary work involves lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles
like docket files, ledgers, and small tools.  Although a
sedentary job is defined as one which involves sitting,
a certain amount of walking and standing is often
necessary in carrying out job duties.  Jobs are
sedentary if walking and standing are required
occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a).  To determine whether an individual has
the ability to perform the full range of sedentary work from an
exertional standpoint, Program Policy Statement (PPS) 101
elaborates:
    "Occasionally" means occurring from very little up to

Ms. Taylor at a less than full-time sedentary capacity of work." As Dr. Vohra also indicated in his Medical Source Statement that Taylor would have cognitive interference with work "occasionally", Dr. Stokes concluded this meant she would have "cognitive interference limiting her to approximately 5.5 hours per day." And, as Dr. Vohra also reported in his Medical Source Statement that Taylor would have significant limitations doing repetitive reaching, handling or fingering, and could only use her hands, fingers and arms for reaching, fine manipulations and grasping, turning or twisting objects only 25% (or about two hours) of the day, Dr. Stokes opined there were "no occupations in the labor market" she could perform.

In response to Taylor's appeal, Prudential requested another independent records review, which was done by r. Philip J. Marion. Dr. Marion issued a report on August 2, 2016 finding there "remains no impairment that translates into occupational restrictions and/or limitations for the time period under review." In addition to requesting the file review, Prudential also

---

one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.
Titles II & XVI: Determining Capability to do Other Work--The Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

requested that its Vocational Specialist review Dr. Stokes'
report.  Upon review, he advised that the jobs he had previously
identified remained valid alternative occupations based on the
report of the IME.

On August 11, 2016, Prudential again denied Taylor's appeal,
stating it was "not disputing her diagnoses," but found that "the
clinical documentation does not support her inability to perform
any gainful occupation."  In so finding, Prudential rejected Dr.
Stokes' conclusions, stating:

> [Dr. Stokes' report] is his assessment based on the
> opinions of her treating providers and not based on the
> diagnostic test findings, examination findings and
> clinical documentation in her claim file.  She is
> reporting generalized complaints for which her doctors
> are advocating for her, but their clinical documentation
> does not support her occupational functioning is
> impacted in total.

Upon this final denial of her claim, Taylor returned to this court
to pursue her claim for wrongful termination and denial of long-
term disability benefits.

Standard of Review

A person who has been denied benefits under an employee
benefit plan governed by ERISA may challenge that denial in
federal court.  See 29 U.S.C. § 1132(a)(1)(B).  Review of a plan
administrator's factual findings is abuse of discretion.  Pettway
v. Prudential Ins. Co. of Am., No. CIV. A. 508CV283KSMTP, 2009 WL
2973393, at *6 (S.D. Miss. Sept. 11, 2009).  Review of the

administrator's interpretation of plan terms and provisions is de
novo, unless the plan grants the administrator discretionary
authority to determine eligibility for benefits and to construe
the terms of the plan, in which case review is for abuse of
discretion.  Menchaca v. CNA Grp. Life Assur. Co., 331 F. App'x
298, 302 (5th Cir. 2009) (citing Corry v. Liberty Life Assurance
Co. of Boston, 499 F.3d 389, 397 (5th Cir. 2007)).  The Plan at
issue gives Prudential such discretionary authority.  Accordingly,
the court's review of Prudential's decision is for abuse of
discretion.

An ERISA claimant bears the burden to show that the
administrator abused its discretion.  George v. Reliance Standard
Life Ins. Co., 776 F.3d 349, 352-53 (5th Cir. 2015).  "Under the
abuse of discretion standard, the plan administrator's decision
will prevail if it 'is supported by substantial evidence and is
not arbitrary and capricious.'"  Davis v.  Aetna Life Ins. Co.,
No. 16-10895, 2017 WL 2589409, at *5 (5th Cir. June 14, 2017)
(quoting Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d
262, 273 (5th Cir. 2005)).  "A decision is arbitrary and
capricious only if it is made without a rational connection
between the known facts and the decision or between the found
facts and the decision."  Truitt v. Unum Life Ins. Co. of America,
729 F.3d 497, 508 (5th Cir. 2013).  "Substantial evidence is more
than a scintilla, less than a preponderance, and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Corry, 499 F.3d at 398 (internal quotation marks and citation omitted). The court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." Id. (internal quotation marks and citation omitted). The law does not require the court "to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004).

In determining whether there was an abuse of discretion, the court must also consider whether the plan administrator had a conflict of interest. Davis, 2017 WL 2589409, at *5. Where the plan administrator "both decides whether an employee is eligible for benefits and pays benefits out of its own pocket," it has a conflict of interest "which a reviewing court should consider as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108, 128 S. Ct. 2343, 2346, 171 L. Ed. 2d 299 (2008). "[A] conflict of interest does not change the standard of review but affects only the amount of deference given under an

abuse of discretion standard of review." <u>Green v. Life Ins. Co.</u>

<u>of N. Am.</u>, 754 F.3d 324, 330 n.4 (5th Cir. 2014). The conflict of

interest is 'but one factor among many that a reviewing judge must

take into account,'" <u>Davis</u>, 2017 WL 2589409, at *5 (quoting <u>Glenn</u>,

554 U.S. at 116); and its significance "will depend upon the

circumstances of the case." <u>Glenn</u>, 128 S. Ct. at 2346 (citing

<u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S.

Ct. 948, 103 L. Ed. 2d 80 (1989)):

> [A] conflict of interest ... should prove more important
> (perhaps of great importance) where circumstances
> suggest a higher likelihood that it affected the
> benefits decision. [<u>Glenn</u>, 554 U.S.] at 117. [A]
> reviewing court may give more weight to a conflict of
> interest [] where the circumstances surrounding the plan
> administrator's decision suggest "procedural
> unreasonableness" – that is, where the "method by which
> [the plan administrator] made the decision was
> unreasonable." <u>Schexnayder v. Hartford Life & Accident</u>
> <u>Ins. Co.</u>, 600 F.3d 465, 469-71 (5th Cir. 2010) (quoting
> <u>Glenn</u>, 554 U.S. at 118).[4]

---

[4]    Proof of a history of biased claims administration would
suggest "a higher likelihood that it affected the benefits
decision." <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 117-18,
128 S. Ct. 2343, 2351, 171 L. Ed. 2d 299 (2008). Plaintiff has
not claimed that Prudential has a history of biased claims
administration. Conversely, a conflict of interest is less
important, and perhaps of no importance, "where the administrator
has taken active steps to reduce potential bias and to promote
accuracy...." <u>Glenn</u>, 554 U.S. at 117-18. Here, there is no
evidence regarding Prudential's efforts to ensure accurate claims
assessment. However, there is no requirement that an insurer take
affirmative steps to reduce its potential bias, and its failure to
do so does not justify giving its conflict greater weight unless
the circumstances otherwise suggest procedural unreasonableness
that hints of bias. <u>Hagen v. Aetna Ins. Co.</u>, 808 F.3d 1022, 1030
(5th Cir. 2015) (citing <u>Schexnayder</u>, 600 F.3d at 470-71).

16

Davis, 2017 WL 2589409, at *5.  Procedural unreasonableness may be indicated where the administrator "emphasized a certain medical report that favored a denial of benefits, ... deemphasized certain other reports that suggested a contrary conclusion," or "failed to provide its independent vocational and medical experts with all of the relevant evidence." Glenn, 554 U.S. 105, 118, 128 S. Ct. 2343, 2352, 171 L. Ed. 2d 299 (2008).  It may also be found where the administrator has ignored or refused to review relevant evidence in the administrative record. Hagen v. Aetna Ins. Co., 808 F.3d 1022, 1028 (5th Cir. 2015).  An administrator's "[f]ailure to address a contrary SSA award can suggest 'procedural unreasonableness' in a plan administrator's decision" which is "important in its own right and ... 'justifie[s] the court in giving more weight to the conflict.'" Schexnayder, 600 F.3d at 469-71 (quoting Glenn, 554 U.S. at 2352). See Glenn v. MetLife (Glenn I), 461 F.3d 660, 669 (6th Cir. 2006), aff'd, Glenn, 554 U.S. 105 ("[A]n ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious.").

Here, Taylor points to the conflict of interest inherent in Prudential's acting as both the plan administrator and insurer of benefits; but she does not specifically argue that Prudential's

administration of her claim was procedurally unreasonable.

However, one or more of the bases on which she challenges

Prudential's decision, if established, could tend to suggest

procedural unreasonableness.  Taylor offers the following reasons

Prudential's decision to deny her long-term disability payments

was unreasonable and hence an abuse of discretion:

(1) Prudential did not afford due consideration to the findings

and conclusions of the Social Security Administration that she

suffers severe impairments which render her totally and

permanently disabled from any gainful employment; (2) Prudential's

reliance on Dr. Blount's IME to support its denial decision was

"misguided"; (3) Prudential's decision is based on medical records

reviews obtained by Prudential which misconstrue and/or

mischaracterize the treatment records of her treating physicians;

and (3) Prudential's decision is based on a vocational assessment

that is flawed.  The court evaluates Taylor's claims both for

procedural unreasonableness and abuse of discretion.


    Analysis

    In February 2013, the Social Security Administration (SSA)

found that Taylor was disabled under applicable Social Security

standards.  The Social Security Administrative Law Judge (ALJ)

found she had severe impairments, including fibromyalgia,

generalized osteoarthritis, lumbar degenerative disc disease with radiculopathy, sacroilliac syndrome/joint dysfunction, activity-related back pain, mechanical right shoulder pain (with continued impingement), irritable bowl syndrome, chronic fatigue syndrome, right elbow pain with lateral epicondylitis and neck pain. He concluded that the combination of these impairments significantly limited her ability to perform basic work activities. In so finding, the ALJ accepted the conclusions offered by Dr. Vohra in his August 2012 Medical Source Statement regarding Taylor's residual functional capacity, finding they were "supported by objective medical findings and ... consistent with his documented treating progress notes in the record" and hence entitled to be given controlling weight as he was her treating physician. The ALJ concluded that Taylor retained the residual functional capacity for sedentary work, subject to the limitations noted in the Medical Source Statement, including lift/carry ten pounds occasionally; stand or walk less than two hours in an eight-hour day; sit for four hours in an eight-hour day with a need for shifting positions at will; reach, handle or finger only occasionally; and balance, bend, stoop, kneel, crawl, squat, and/or twist rarely. Given her residual functional capacity for limited sedentary work, the ALJ found that Taylor could not perform her past relevant work and that considering her age, education, work experience and residual functional capacity, there

were no jobs that exist in significant numbers in the national economy that she could perform.

Taylor contends that Prudential abused its discretion by ignoring SSA's finding that she was totally disabled "in favor of the opinions of their own paid doctors' conclusory opinions that [she] is not disabled." "[W]hile an ERISA ... administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination." Horton v. Prudential Ins. Co. of America, No. 02-30439, 2002 WL 31415104, *3 (5th Cir. Oct. 8, 2011). See also Schexnayder, 600 F.3d at 471 n.3 ("We do not require Hartford to give any particular weight to the contrary findings [Social Security Administration award]; indeed, Hartford could have simply acknowledged the award and concluded that, based on the medical evidence before it, the evidence supporting denial was more credible."). In its initial denial of her claim for long-term disability benefits on December 19, 2014, Prudential acknowledged that Taylor had been approved for Social Security disability benefits but explained that this did not change its view of the claim as SSA had made its determination based on the information available at the time of its decision on February 22, 2013, whereas Prudential's decision, nearly two years later, was based on additional information that was unavailable to the SSA, including the results of the October 2014 IME. In the court's

opinion, under the circumstances, Prudential's decision was neither procedurally unreasonable nor an abuse of discretion merely because it was contrary to the determination of the SSA. See Lowery v. McElroy Metal Mill, Inc., No. CIV. A. 11-1491, 2013 WL 1197234, at *9 (W.D. La. Mar. 25, 2013).[5]

Taylor contends Prudential's use of Dr. Blount's report as a basis for denial of her claim was "misguided" inasmuch as Dr. Blount did not disagree with the restrictions and limitations imposed by Dr. Vohra or any of her treating physicians. On the contrary, he agreed with and deferred to the restrictions and limitations on physical activities advised by Dr. Vohra. She contends that Dr. Blount's report is at best "neutral" and does not provide clear evidence to support Prudential's denial of benefits.

---

[5] Notably, SSA determined that Dr. Vohra's opinion, as expressed in the August 2012 Medical Source Statement, was entitled to controlling weight. While Social Security regulations require that opinions of a claimant's treating physician be accorded special weight, no such rule applies to disability determinations under ERISA. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S. Ct. 1965, 1967, 155 L. Ed. 2d 1034 (2003) ("We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians."). And, while Prudential did not directly address Dr. Vohra's Medical Source Statement in any of its denial letters, its final denial letter did address Dr. Stokes' vocational assessment, which, like the Social Security decision, relied on the same Medical Source Statement. Prudential wrote that Dr. Stokes' assessment was based on the opinions of her treating providers who were "advocating for her" but whose clinical documentation did not support the limitations on her occupational functioning indicated.

Dr. Blount's opinion, based on his review of the medical records and the 2011 FCE and on his examination of Taylor, is briefly summarized: She has diagnoses of multiple conditions and a history of previous back surgeries; the condition causing the symptoms she was experiencing at the time of the IME was likely fibromyalgia; her presentation was "completely consistent" with fibromyalgia and other potential causes of her symptoms had been ruled out; fibromyalgia, as a condition, does not have specific limitations or restrictions, rather, the patient's tolerance of her symptoms is what determines her limitations or restrictions; he had limited experience with Taylor, having seen her only once and for a short time and therefore would not offer formal restrictions or limitations; her treating physicians had given her restrictions and limitations and requested that she be given light duty status; the 2011 FCE concluded she could have light-duty status; and he agreed with the FCE and her treating physicians that she should be able to perform light-duty work.

This is not a "neutral" report. Dr. Blount concluded that Taylor "should be able to perform light duty work," at least as the 2011 FCE defined or described the concept of "light duty." He agreed with her treating physicians that she should not be required to "climb ladders, ropes, and scaffolds given her balance issues ... and medications...", and agreed, implicitly, with the limitations noted in the FCE; but most significantly, he agreed

with her treating providers that she could work, albeit with limitations.

This was not an unreasonable conclusion, nor was it unreasonable for Prudential to rely on Dr. Blount's opinion. The 2011 FCE report concluded that Taylor was able to perform light duty work. On August 8, 2011, shortly following the FCE, Dr. Vohra noted that the FCE limitations placed her at a "very light level of work," and he restricted Taylor's physical activities to only occasionally doing the following: lifting floor to waist 15 pounds; lifting waist to crown 10 pounds; overhead work, forward bending and stooping. In a September 15, 2011 treatment note, he wrote that he "concur[red] with the restrictions as put forth in the functional capacity evaluation, which precludes her from her regular occupation." Dr. James Hensarling, who treated Taylor for fibromyalgia, also expressed agreement with the results of the FCE. On August 10, Dr. Massie Headley, who treated Taylor for fibromyalgia, prescribed the same restrictions as Dr. Vohra; and in a September 8, 2011 letter, Dr. Headley, citing the results of the FCE and the recent restrictions he and Dr. Vohra had ordered, agreed that Taylor could not perform the duties of her job at Wrigley. However, the limitations prescribed by Dr. Vohra and Dr. Headley did not preclude Taylor from performing work altogether but rather limited her to light, very light or sedentary work – which is precisely what Prudential concluded she was capable of performing.

The court does recognize that Dr. Vohra's August 2012 Medical Source Statement, which he provided in connection with Taylor's claim for Social Security disability benefits, indicated substantial limitations on Taylor's functional capacity.[6] However, notwithstanding the finding of the SSA to the contrary, it is evident that some of the limitations he identified – indeed, the most drastic ones – were not reasonably supported by the medical record. For example, the court has reviewed the records of Taylor's visits with Dr. Vohra during the relevant period and cannot find any reasonable basis for a conclusion that she was limited, much less severely limited, in the use of her arms, hands and fingers. Further, the court notes that while Dr. Vohra indicated in the Medical Source Statement that she could stand or walk for less than two hours in an eight-hour workday, eleven months earlier, he noted *no limitation* in her ability to stand or walk, just as the FCE indicated no such limitation. There is

---

[6]     It is unclear whether a copy of this document was provided to Dr. Blount as part of the IME. Given the substantial limitations noted in the document – substantially more limiting than those noted in the FCE or previously recognized by Dr. Vohra – and given Dr. Blount's failure to address these limitations – it might be reasonably inferred that Dr. Blount was not provided the document. If the court were to assume for the sake of argument that it was not provided for his review and were to further assume it was a relevant medical record that should have been provided, the court would find procedural unreasonableness. However, that finding would add little, if any weight, to the conflict of interest because in the court's opinion, the document is not well supported by Dr. Vohra's medical records (notwithstanding SSA's contrary finding). Rather, the Medical Source Statement is more in the nature of Dr. Vohra's advocating for his patient, as Prudential implicitly found.

24

nothing in his or any of the medical records to suggest such a precipitous decline in her condition during the intervening eleven months as would have this kind of detrimental impact on her ability to stand or walk.

Taylor's arguments that she was wrongly denied benefits are based in no small part on Dr. Vohra's Medical Source Statement – or rather on Dr. Stokes' vocation assessment, which is in turn based on the limitations identified in this Medical Source Statement.  Citing the restrictions noted in the Medical Source Statement, she argues that Prudential's vocational assessment "does not fairly address the combination of limitations and restrictions placed on Ms. Taylor by her treating physicians, which are addressed in the report of ... Dr. Stokes."  In the court's opinion, however, Prudential did not abuse its discretion in disregarding Dr. Vohra's Medical Source Statement as unsupported by the medical record.

Taylor further argues that Prudential's reliance on the records reviews performed by Dr. Parrillo and Dr. Manion to support its denial was unreasonable and an abuse of discretion. It was not unreasonable for Prudential to seek independent review of Taylor's medical records.[7]  However, it is apparent that both of these reviewers mischaracterized and/or disregarded the FCE, Dr. Blount's IME report and certain portions of the medical records to

---

[7]     There is nothing to suggest that either reviewer has any record of bias.

arrive at the conclusion that Taylor either does not suffer from fibromyalgia or does not have any functional limitations as a result of that (or any other condition).[8]  The court would not hesitate to find that reliance on such conclusions as the basis for denial of benefits was an abuse of discretion.  However, in denying her claim for benefits, Prudential did not dispute Taylor's diagnoses.  It specifically accepted that she had multiple diagnoses, including fibromyalgia.  Moreover, it did not find that she had no consequent physical limitations.  Rather, it credited the limitations identified in the FCE and found that she could perform only sedentary work.  In the court's opinion, this was not an abuse of discretion.

Taylor objects that Prudential's vocational assessment is flawed and does not support Prudential's position that she does not meet the Plan's definition of disability because the positions it identified are hourly, not salaried positions.  Prudential's vocational assessment identified alternative sedentary positions in which Taylor could earn a minimum of $15.63 per hour.  Under the plan, a claimant is disabled under the "gainful occupation" standard if she is not reasonably fitted by education, training or experience for any "gainful occupation."  "Gainful occupation" is defined as an occupation in which she could be expected to earn at

---

[8]     Both reviewers clearly opined that Taylor has no restrictions or limitations from any condition.  This is obviously inconsistent with the medical record.  Given their phrasing, it is not as clear whether either or both purported to opine that she did not suffer from fibromyalgia.

least 60% of her earnings from her regular occupation. Prudential arrived at the $15.63 per hour figure by converting Taylor's annual salary at Wrigley to an equivalent hourly wage. Prudential correctly points out that this is not inconsistent with the Plan's definition of "gainful occupation," which does not require that a salaried employee be found disabled only if there is no other *salaried* occupation in which she could earn at least 60% of her previous earnings. Taylor's position is thus rejected.

Conclusion

Based on all of the foregoing, it is ordered that Prudential's motion for summary judgment is granted, and Taylor's motion for summary judgment and to vacate termination and denial of long term disability benefits is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of July, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE